# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**REV. DENINAH GOODWIN**                    **CIVIL ACTION**
    **Plaintiff**

**VERSUS**                                                   **No. 11-1397**

**HOUSING AUTHORITY OF**                   **SECTION "E"**
**NEW ORLEANS, et al.,**
    **Defendants**

## ORDER AND REASONS

Before the Court are numerous motions filed by *pro se* plaintiff Rev. Deninah Goodwin ("Rev. Goodwin")[1] and various defendants.  The Court rules as follows.

## BACKGROUND

On October 25, 2011, Rev. Goodwin filed a "Lawsuit for Damages for Federal Breach of Contracts during Hurricane Katrina, Rita and Ike" styled as a putative class action brought by Rev. Goodwin, individually and on behalf of "Hattie Goodwin, deceased, and Christenina Webb, minor child, and others affected before, during and after Hurricane Katrina and Ike."[2]  Rev. Goodwin named a number of federal and state government agencies as defendants in her original complaint.  On November 8, 2011, Rev. Goodwin

---

[1] While Rev. Goodwin lists her late mother's estate, her daughter Christenina Webb, and a nonprofit organization called "I Am My Brother's Keeper, and My Father's Child," as plaintiffs in the body of her second amended complaint, *see* R. Doc. 27 at p. 2, she does not name those individuals and entities in the caption.  Federal Rule of Civil Procedure 10(a) requires the caption of a complaint to name all parties.  Rev. Goodwin failed to comply with this rule.  Accordingly, Rev. Goodwin's mother's estate, Ms. Webb, and the nonprofit organization are not plaintiffs in this case.  To the extent those individuals and entities are plaintiffs, the Court's ruling applies to them as well.  In addition, the Court notes that Rev. Goodwin purports to represent not only herself but also to appear on behalf of her late mother's estate, Ms. Webb, and the nonprofit organization.  Rev. Goodwin also purports to act as "Lead Plaintiff" on behalf of a putative class of "Affected Americans, who too, are recovering from Hurricanes Katrina, Rita, and Ike."  Rev. Goodwin, as a *pro se* plaintiff, cannot represent other individuals or entities.  *See, e.g., Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-65 (9th Cir. 2008) (collecting cases).  Nor can she act as "Lead Plaintiff" on behalf of a putative class.  *Id.*

[2] R. Doc. 5.

1

filed a first amended complaint, seeking damages from several federal and state agencies "for the violations of the federal and state laws, affecting the housing, of Americans, affected before, during, and after Hurricanes Katrina, Rita and Ike."[3]  On April 30, 2012, Rev. Goodwin was granted leave to file a second amended complaint.[4]  In that second amended complaint,[5] Rev. Goodwin asserts a number of individuals, private corporations, and federal and state government agencies engaged in conduct during and after Hurricanes Katrina, Rita, and Ike giving rise to causes of action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and various state laws.  Rev. Goodwin asserts this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

Rev. Goodwin's second amended complaint is complicated, and contains allegations and claims too numerous to list and, in some cases, too difficult to explain.  To the extent possible, the Court will address Rev. Goodwin's specific allegations against specific defendants in conjunction with its rulings on the pending motions.

## ANALYSIS

### I.    Rev. Goodwin's Motions

#### A.    Rev. Goodwin's Motion for Entry of Default[6]

Rev. Goodwin has filed a motion seeking an entry of default for failure to plead or

---

[3] R. Doc. 13.

[4] R. Doc. 26.

[5] R. Doc. 27.

[6] R. Doc. 73.

otherwise respond, pursuant to Rule 55(a),[7] against the following defendants: (1) Debra Alexander, (2) the Baytown Housing Authority, (3) the City of Baytown, Texas, (4) Fran Parent, (5) Daniel Rodriguez, (6) Dr. Julio Shahar, (7) Rev. James Mike Terrell ("Rev. Terrell"), (8) Mark Tiller, (9) Dr. Brian Walker, (10) Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), (11) Fred Tombar, and (12) Kelly Dorfman.  Rev. Goodwin contends that these defendants failed to answer or otherwise respond to her second amended complaint in a timely fashion.  Mr. Tombar, Mr. Rodriguez, Ms. Alexander, Dr. Shahar, and Dr. Walker filed formal oppositions to Rev. Goodwin's motion for entry of default.[8]

The Baytown Housing Authority, the City of Baytown, Mr. Tombar, Mr. Rodriguez, Ms. Alexander, Dr. Shahar, Dr. Walker, and Wells Fargo all timely filed motions to dismiss the claims asserted in Rev. Goodwin's second amended complaint.[9] Rev. Goodwin's motion for entry of default against these defendants fails because they have filed pleadings defending against her action.

Accordingly, to the extent Rev. Goodwin seeks an entry of default under Rule 55(a) against the Baytown Housing Authority, the City of Baytown, Mr. Tombar, Mr. Rodriguez, Ms. Alexander, Dr. Shahar, Dr. Walker, and Wells Fargo, **IT IS ORDERED** that Rev. Goodwin's motion be and hereby is **DENIED.**

---

[7] Rev. Goodwin states in her motion that she seeks a "motion for entry of default judgment." Because the entry of a clerk's default under Rule 55(a) is a necessary prerequisite to the entry of a default judgment under Rule 55(b), the Court construes Rev. Goodwin's motion as a request for entry of default under Rule 55(a).

[8] R. Doc. 75 (Tombar, Rodriguez, and Alexander); R. Doc. 77 (Dr. Shahar); R. Doc. 79 (Dr. Walker).

[9] *See* R. Doc. 58 (Motion to dismiss filed by the Baytown Housing Authority and the City of Baytown); R. Doc. 63 (Motion to dismiss filed by Hebert, Tombar, Rodriguez, and Alexander); R. Doc. 54 (Motion to dismiss filed by Dr. Shahar); R. Doc. 56 (Motion to dismiss filed by Dr.Walker); R. Doc. 74 (Motion to dismiss filed by Wells Fargo).

The record reflects that a summons was issued to Ms. Dorfman on October 4, 2012.[10] The return of service filed in the record,[11] however, is unsigned, and the attached printout from the United States Postal Service stating that "Your document was delivered at 7:12 a.m. on November 5, 2012 in Washington, DC 20410" does not demonstrate that the summons was properly served on Ms. Dorfman under Rule 4(e).[12] Because Rev. Goodwin's purported service of the summons on Ms. Dorfman did not comply with Rule 4(e), service was never perfected on Ms. Dorfman, timely or otherwise.  The entry of a clerk's default under Rule 55(a) is predicated on a defendant's failure to timely respond to a plaintiff's complaint, and thus effective service is a prerequisite to the entry of a clerk's default.  *See, e.g., Maryland State Firemen Assoc. v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant."). In the absence of effective service on Ms. Dorfman, Rev. Goodwin's requested entry of default against Ms. Dorfman is not warranted.    Accordingly, **IT IS FURTHER ORDERED** that Rev. Goodwin's motion for entry of default against Kelly Dorfman be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Rev. Goodwin shall show good cause, in writing, why her claims against Ms. Dorfman should not be dismissed, pursuant to Rule 4(m), for failure to timely serve a copy of her second amended complaint on Ms. Dorfman.  Rev.

---

[10] R. Doc. 45.

[11] R. Doc. 111.

[12] Under Federal Rule of Civil Procedure 4(d), an individual may waive service of process, obviating the need for service on the individual.  There is no indication that Ms. Dorfman waived service of Rev. Goodwin's second amended complaint.  Accordingly, Rule 4(e) provides the options for service on an individual who has not waived service.

Goodwin's written response to this show cause order shall be filed no later than **August 15, 2013,** and the document must be received by this Court by this date to be considered timely. Failure to comply with this deadline will result in the dismissal of Rev. Goodwin's claims against Ms. Dorfman.

With respect to Fran Parent, Rev. Terrell, and Mark Tiller, the Court finds these three defendants were in fact properly served with copies of Rev. Goodwin's second amended complaint.[13] Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Because Fran Parent, Rev. Terrell, and Mark Tiller have not responded to Rev. Goodwin's second amended complaint, the Court has no choice but to direct the Clerk to enter a default against these three defendants.

Accordingly, **IT IS FURTHER ORDERED** that Rev. Goodwin's motion for entry of default against Fran Parent, Rev. Terrell, and Mark Tiller be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall file into the record an entry of default, pursuant to Rule 55(a), against Fran Parent, Rev. Terrell, and Mark Tiller.

**IT IS FURTHER ORDERED** that Fran Parent, Rev. Terrell, and Mark Tiller shall each respond to Rev. Goodwin's second amended complaint no later than **August 15, 2013,** at **5:00 p.m.**, or show good cause, in writing, why Rev. Goodwin should not be permitted to move for default judgment against them pursuant to Rule 55(b) as a result of

---

[13] *See* R. Doc. 65-7 (return of service on Fran Parent demonstrating that service was effected via certified mail); R. Doc. 65-8 (return of service on Mark Tiller demonstrating that service was effected via certified mail); R. Doc. 65-9 (return of service on Rev. Terrell demonstrating that service was effected via certified mail).

their failure to respond.  Responses to this show cause order must be received by the Clerk's Office by **August 15, 2013,** at **5:00 p.m.** to be considered timely filed.

### B.   Rev. Goodwin's Motions for Declaratory Judgment[14]

Rev. Goodwin has filed two motions for declaratory judgment against Wells Fargo. Wells Fargo opposes both motions.[15]  Rev. Goodwin seeks essentially the same relief in both motions for declaratory judgment - a declaration that Wells Fargo owes various amounts of money to Rev. Goodwin and the other named plaintiffs.  The Court notes that Rev. Goodwin's motions for declaratory judgment, which are likely more appropriately characterized as motions for summary judgment, considering Rev. Goodwin's reliance on material outside the pleadings, are premature, in light of the fact that issue has not joined, a scheduling order has not been entered, and discovery has not been conducted.  As explained below, Wells Fargo has moved to dismiss Rev. Goodwin's claims in their entirety, and, because the Court agrees with Wells Fargo that Rev. Goodwin's claims must be dismissed, Rev. Goodwin's motions for declaratory judgment are denied.

Accordingly, **IT IS FURTHER ORDERED** that Rev. Goodwin's motions for declaratory judgment be and hereby are **DENIED.**

### C.   Rev. Goodwin's Motion for "Temporary Restraining Order"[16]

---

[14] *See* R. Doc. 86 (Rev. Goodwin's first motion for declaratory judgment); R. Doc. 121 (Rev. Goodwin's second motion for declaratory judgment).

[15] *See* R. Doc. 97 (Wells Fargo's opposition to first motion for declaratory judgment); R. Doc. 124 (Wells Fargo's opposition to second motion for declaratory judgment).

[16] R. Doc. 118.  Rev. Goodwin's motion purports to seek a temporary restraining order under Rule 65(b), but, because Rev. Goodwin's motion seeks relief that would last for more than fourteen days, the Court construes Rev. Goodwin's motion as a request for preliminary injunctive relief under Rule 65(a).

Rev. Goodwin has also moved for a preliminary injunction against Wells Fargo.[17] Wells Fargo opposes Rev. Goodwin's motion.[18]   As with Rev. Goodwin's motions for declaratory judgment, because the Court grants Wells Fargo's motion to dismiss Rev. Goodwin's claims in their entirety, the Court need not but will briefly address Rev. Goodwin's motion for preliminary injunction.  Rev. Goodwin seeks five things with her motion for preliminary injunction: (1) to "circumvent further accumulation of property taxes" on a tract of immovable property she inherited from her late mother; (2) to require Wells Fargo to cancel a January 2002 mortgage granted against the property and in favor of HUD as security for a $5,445.90 note payable to HUD; (3) to compel Wells Fargo to pay Rev. Goodwin $152,000 she claims Wells Fargo owes to her late mother's estate; (4) for a "favorable ruling" on her pending motions for declaratory judgment; and (5) for a declaration that the Huntington Park Homeowners' Association cannot rightfully retain the subject tract of immovable property.

A plaintiff may obtain a preliminary injunction only after establishing four things: (1) that there is a "substantial likelihood" the plaintiff will prevail on the merits; (2) that there is a "substantial threat" the plaintiff will suffer "irreparable harm" if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendant; and (4) that the granting of the preliminary injunction will not "disserve the public interest." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570,

---

[17] In addition to Wells Fargo, Rev. Goodwin also directs her motion at the Huntington Park Homeowners' Association, which was dismissed as a defendant in this case, and the City of New Orleans, "thru [sic] their [sic] Taxation and Adjudication Contractor, Civic Source Collections and Auctioneer."  The City of New Orleans is a defendant in this case, but, as explained below, it has not responded to Rev. Goodwin's second amended complaint.

[18] R. Doc. 125.

574 (5th Cir. 2012). The decision to grant or deny a preliminary injunction application lies within the sound discretion of the district court. *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).

Rev. Goodwin has not satisfied any of the requirements for the issuance of her requested five-part preliminary injunction. She has not demonstrated there is a substantial threat that she will suffer irreparable harm if an injunction is not granted, nor has she even addressed the burden the requested injunction might have on the defendants or the effect, if any, the injunction would have on the public interest. Most importantly, Rev. Goodwin has not established she is likely to prevail on the merits of her underlying claims, many of which are similar or identical to the five-part injunction Rev. Goodwin now seeks. The Court, in its discretion, denies Rev. Goodwin's motion for preliminary injunction.

Accordingly, **IT IS FURTHER ORDERED** that Rev. Goodwin's motion for preliminary injunction be and hereby is **DENIED.**

### D.    Rev. Goodwin's Motion for "Mortgage Release"[19]

Rev. Goodwin has filed a motion requesting that the Court "order, the release, of The Mortgage, for the approximate amount of $5,000, being held against [the] Property, located at 7268 Claridge Ct., in the City of New Orleans, La." Wells Fargo opposes Rev. Goodwin's motion.[20] It appears Rev. Goodwin directs this motion at Wells Fargo, which would mean the Court may dispose of the motion for mortgage release for the same reason it denied Rev. Goodwin's motions for declaratory judgment and her motion for preliminary injunction (i.e., because Rev. Goodwin's claims against Wells Fargo are dismissed in their

---

[19] R. Doc. 123.

[20] R. Doc. 129.

entirety), but it is not entirely clear that this motion is directed at Wells Fargo.[21] Regardless of the target of the motion, however, Rev. Goodwin has clearly failed to demonstrate any basis in fact or law for the relief she seeks.  Indeed, the requested relief is either redundant of her other requests - specifically, her request for injunctive relief and her requests for declaratory relief - or is simply not a request the Court has authority to grant.

Accordingly, **IT IS FURTHER ORDERED** that Rev. Goodwin's motion seeking the mortgage on her property be released be and hereby is **DENIED.**[22]

### E.    Rev. Goodwin's "Motion for Continuance for Notice of Appeal for Appointership [sic] of Legal Counsel, Discovery Plan, and Deadlines"[23]

With this motion, it appears Rev. Goodwin is requesting an extension of time to do the following: (1) to file a notice of appeal regarding Judge Knowles' June 3, 2013 order[24] denying Rev. Goodwin's motion to appoint counsel[25]; (2) to submit a proposed discovery plan for this case; (3) to re-issue summons to dismissed defendants Hon. Alphonse Jackson, St. Luke's Episcopal Hospital, and the Huntington Park Homeowners' Association; and (4) to provide unidentified "supplemental information" to the Court.  Dr. Shahar opposes this motion.[26]  To the extent any of the things Rev. Goodwin is proposing has a

---

[21] As explained in Wells Fargo's opposition, Rev. Goodwin's motion may be more properly characterized as seeking relief from HUD instead of Wells Fargo.  HUD is no longer a defendant in this case.

[22] The Court addresses Wells' Fargo's request for sanctions against Rev. Goodwin, which Wells Fargo sets forth in its motion to dismiss and repeats in its opposition to Rev. Goodwin's motion to have her mortgage released, in the context of Wells Fargo's motion to dismiss.  *See infra* Section II.A.

[23] R. Doc. 131.

[24] R. Doc. 116.

[25] R. Doc. 103.

[26] R. Doc. 134.

deadline that has already passed (i.e., to file a notice of appeal of Judge Knowles' order and to re-issue summons), such that an extension of time could be helpful, Rev. Goodwin has not provided any compelling reason why an extension of time, requested after the applicable deadline has passed, is necessary or appropriate.  Moreover, Rev. Goodwin has provided no justification for her other proposals (i.e., to submit a discovery plan and to provide supplemental information to the court), and the Court finds those requests to be unfounded and meritless.

Accordingly, **IT IS FURTHER ORDERED** that Rev. Goodwin's "motion for continuance" be and hereby is **DENIED.**

## II.    Wells Fargo's[27] Motions

### A.    Wells Fargo's Motion to Dismiss[28]

Wells Fargo has moved to dismiss the claims in Rev. Goodwin's second amended complaint, with prejudice, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Wells Fargo also requests that Rev. Goodwin be enjoined from filing any more pleadings in this case.  Rev. Goodwin opposes Wells Fargo's motion.[29]  Wells Fargo has filed a reply in further support of its motion.[30]

While Rev. Goodwin's claims are often difficult to understand, it appears her claims against Wells Fargo are, essentially, as follows:

- • Wells Fargo violated Rev. Goodwin's rights by applying insurance proceeds received by Rev. Goodwin's late mother, as a result of an insurance claim filed

---

[27] "Wells Fargo" is short for Wells Fargo Home Mortgage, Inc.

[28] R. Doc. 74.

[29] R. Doc. 90.

[30] R. Doc. 102.

after Hurricane Katrina, to reduce the mother's secured debt to Wells Fargo in connection with a 2001 mortgage loan;

- Wells Fargo violated Rev. Goodwin's rights by pursing a foreclosure action against the property she inherited from her late mother in 2007; and

- Wells Fargo violated Rev. Goodwin's rights by refusing to accept a reduced payoff in satisfaction of the 2001 mortgage loan.

Rev. Goodwin claims Wells Fargo's actions constitute "violations of Federal Banking Laws, Fraud, and Deprivation[s] of Constitutional Rights," "violations of the Truth in Negotiations Act," and "any number of state claim act [and] false claims act" violations.  Rev. Goodwin also claims Wells Fargo violated RICO and the FCA.

Wells Fargo argues Rev. Goodwin's claims fail to state facially plausible causes of action, and therefore must be dismissed in their entirety.  Wells Fargo argues that Rev. Goodwin's claims fail to meet the pleading requirements contained in Rules 8, 9, and 11, and moreover, that those claims lack substantive merit.  Wells Fargo also argues Rev. Goodwin's co-plaintiffs[31] are not proper parties in this action and even if they were, they too fail to state facially plausible causes of action.  Finally, Wells Fargo argues that Rev. Goodwin is a vexatious litigant and should be enjoined from filing any further pleadings in this court.

Federal Rule of Civil Procedure 8 provides that any pleading stating a claim for relief must contain the following:

> (1)   a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

---

[31] As explained above, none of Rev. Goodwin's "co-plaintiffs" are actually plaintiffs in this case. *See supra* note 1.

   (2)  a short and plain statement of the claim showing that
      the pleader is entitled to relief; and

   (3)  a demand for the relief sought, which may include relief
      in the alternative or different types of relief.

FED. R. CIV. P. 8 (a).  Rule 8(e) further provides that "[p]leadings must be construed so as to do justice."  Federal Rule of Civil Procedure 9 provides a heightened pleading requirement for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 199 (2009).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotation omitted).  "The particularity demanded by Rule 9(b) . . .is supplemental to the Supreme Court's . . . interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 185 (5th Cir. 2009) (footnote added) (citing *Twombly,* 550 U.S. at 570).

   Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim if the claimant fails to set forth a factual allegation in support of its claim that would entitle it to relief (i.e., for "failure to state a claim").  *See, e.g. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  Those factual

allegations "must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the non-moving party, *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009), but the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

It is important to note that, in general, *pro se* litigants are held to less stringent standards than parties represented by counsel. While a district court generally may not "go outside the complaint" in considering a Rule 12(b)(6) motion to dismiss, *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003), when ruling on a motion to dismiss a *pro se* complaint, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." *Howard v. King,* 707 F.2d 215, 220 (5th Cir. 1983); *Clark v. Huntleigh Corp.*, 119 F. App'x. 666, 667 (5th Cir. 2005). While Rev. Goodwin's *pro se* status does not obviate the need for her to comply with the basic standards set forth in the federal rules, the Court has attempted to assess the merits of Rev. Goodwin's claims in the second amended complaint as opposed to dismissing those claims based on technical issues with her pleadings.

After careful review of Rev. Goodwin's 121-page second amended complaint and all

materials subsequently filed, the Court finds Rev. Goodwin has not stated any facially plausible cause of action against Wells Fargo.  Rev. Goodwin's disjointed, conclusory allegations do not appear to give rise to any statutory or constitutional violation on the part of Wells Fargo, let alone the violations specifically pled by Rev. Goodwin.  Likewise, Rev. Goodwin has not alleged sufficient facts giving rise to state law tort or contract claims, and, as recognized by Wells Fargo, it is very likely that such claims would be prescribed in any event.  Lastly, setting aside the issue of whether Rev. Goodwin is permitted to act as representative of a putative class, her amended complaint fails to meet any of the requirements for class certification contained in Rule 23.

Wells Fargo's decision to apply property insurance proceeds recovered for casualties sustained to its collateral to reduce a mortgagor's secured indebtedness, which it was expressly authorized to do, is not a breach of contract, a state law tort, or a violation of any statutory or constitutional right.  Nor is Wells Fargo's decision to refuse a reduced payoff or its decision to institute a foreclosure proceeding against Rev. Goodwin's late mother's estate an actionable violation.  Simply put, Rev. Goodwin has not alleged facts giving rise to the reasonable inference that Wells Fargo is in any way liable to Rev. Goodwin. Rev. Goodwin's failure to state any facially plausible cause of action against Wells Fargo means her claims against Wells Fargo must be dismissed.  Because the Court finds Rev. Goodwin's claims lack substantive merit, it is unnecessary to address the technical issues with her pleadings.

Accordingly, **IT IS FURTHER ORDERED** that Wells Fargo's motion to dismiss Rev. Goodwin's claims under Rule 12(b)(6) be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that Rev. Goodwin's claims against Wells Fargo be

and hereby are **DISMISSED** in their entirety.

The Court turns now to Wells Fargo's request that Rev. Goodwin be enjoined from any future filings in this court.  The Fifth Circuit has stated that "[f]ederal courts have the power to enjoin plaintiffs who abuse the court system and harass their opponents. This includes enjoining future filings to protect its jurisdiction and control its docket." *Clark v. Mortenson*, 93 F. App'x 643, 654 (5th Cir. 2004) (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986)).  "An injunction against future filings must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.*  While the Court recognizes Rev. Goodwin's long history of filing meritless claims in the state and federal courts in Texas and Louisiana, the Court finds Wells Fargo's requested injunction to be unnecessary in light of the Court's dismissal of virtually all of Rev. Goodwin's claims against almost all remaining defendants.  With respect to Wells Fargo, should Rev. Goodwin continue to pursue her meritless claims, the Court will not hesitate to take necessary action, which may include the issuance of an injunction.

Accordingly, **IT IS FURTHER ORDERED** that Wells Fargo's request for an injunction be and hereby is **DENIED.**

### B. Wells Fargo's Motion to Strike[32]

In addition to moving to dismiss Rev. Goodwin's claims, Wells Fargo has also moved to strike from the record two affidavits attached to Rev. Goodwin's motion for preliminary injunction.[33]  Wells Fargo argues the affidavits fail to comply with 28 U.S.C. § 1746, which provides the requirements for a valid declaration, that the affiants lack personal knowledge

---

[32] R. Doc. 126.

[33] *See* R. Doc. 118, Ex. 1 (Affidavits of Rev. Goodwin and Christenina Webb).

as to the contents of those affidavits, that the content of the affidavits is factually incorrect, and that the affidavits are rife with speculation and legal conclusions. Rev. Goodwin opposes Wells Fargo's motion to strike.[34]  Because the Court has denied Rev. Goodwin's motions with respect to Wells Fargo, including her motion for preliminary injunction, and dismissed her claims against Wells Fargo in their entirety, it is unnecessary to strike the subject affidavits from the record.

Accordingly, **IT IS FURTHER ORDERED** that Wells Fargo's motion to strike be and hereby is **DENIED.**

### III.   Dr. Julio Shahar's Motion to Dismiss[35]

Dr. Shahar has moved to dismiss Rev. Goodwin's claims under Rule 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim.  Rev. Goodwin opposes Dr. Shahar's motion.[36]

As with Rev. Goodwin's claims against Wells Fargo, it is difficult to pinpoint the exact nature of Rev. Goodwin's claims against Dr. Shahar.  Rev. Goodwin alleges that Dr. Shahar was her mother's treating physician in Baytown, Texas, but Rev. Goodwin's only specific claim directed at Dr. Shahar is that he violated Rev. Goodwin's "Constitutional Rights."

Dr. Shahar now argues that Rev. Goodwin lacks standing to bring such a generalized grievance against him and that he has no connection to any of Rev. Goodwin's more specific

---

[34] R. Doc. 128.

[35] R. Doc. 54.

[36] R. Doc. 83.

claims.  Dr. Shahar also argues that this Court cannot exercise general or specific personal jurisdiction over him, as he does not live or work in Louisiana, he has no business contacts in Louisiana, and the specific acts alleged in Rev. Goodwin's second amended complaint relating to Dr. Shahar did not occur in Louisiana.  Lastly, Dr. Shahar argues that even if this Court does have subject matter and personal jurisdiction, Rev. Goodwin's claims lack substantive merit in any event.

Federal Rule of Civil Procedure 12(h)(3) mandates the dismissal of an action when a federal court lacks jurisdiction over the subject matter of the plaintiff's claim. A party seeking to challenge a federal court's subject matter jurisdiction, based upon the allegations on the face of the complaint, may file a motion pursuant to Federal Rule of Civil Procedure 12(b)(1). *Barrera -Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)). In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts." *Barrera–Montenegro*, 74 F.3d at 659 (internal citations omitted). A federal court has an unflagging duty to inquire into its jurisdiction whenever the possibility of a lack of jurisdiction arises. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). As the party asserting federal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Id.* "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the

court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

An actual "case or controversy" must exist before a federal court can properly exercise subject matter jurisdiction. U.S. CONST. Art. III, § 2, cl. 1. Standing is an element of the "case or controversy" requirement, and lack of standing deprives the district court of subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum of standing" is comprised of three requirements: (1) the plaintiff must suffer an injury in fact - "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the plaintiff's injury must be "fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* The party invoking federal jurisdiction bears the burden of establishing these three requirements. *Id.*

Rev. Goodwin's claims, at least with respect to Dr. Shahar, are nothing more than generalized grievances that have little, if any, connection to Dr. Shahar. Setting aside whether Rev. Goodwin can meet either the "injury in fact" or "redressability" requirements for constitutional standing, the Court finds Rev. Goodwin clearly has failed to establish the "fairly traceable" requirement. Rev. Goodwin has not demonstrated any connection between the claimed constitutional rights violation and Dr. Shahar's alleged conduct. Nor has Rev. Goodwin even attempted to connect Dr. Shahar to her more specific claims (i.e. for injunctive relief, for declaratory relief, for a protective order, etc.).[37] Because Rev.

---

[37] Instead of responding to the legal arguments raised by Dr. Shahar's motion to dismiss, Rev. Goodwin's opposition to Dr. Shahar's motion raises a slew of new factual allegations against Dr. Shahar and asserts a number of new state and federal law claims. Not only is it inappropriate to raise new facts

Goodwin has not carried her burden of establishing the "fairly traceable" requirement for constitutional standing in connection with her claims against Dr. Shahar, the Court finds that Rev. Goodwin lacks standing to bring those claims and, because Rev. Goodwin lacks standing to bring those claims, the Court lacks subject matter jurisdiction to consider those claims.

Accordingly, **IT IS FURTHER ORDERED** that Dr. Shahar's motion to dismiss Rev. Goodwin's claims under Rule 12(b)(1) be and hereby is **GRANTED.**  Because the Court grants Dr. Shahar's motion to dismiss under Rule 12(b)(1), it need not address Dr. Shahar's arguments for dismissal under Rules 12(b)(2) and 12(b)(6).

**IT IS FURTHER ORDERED** that Rev. Goodwin's claims against Dr. Shahar be and hereby are **DISMISSED** for lack of subject matter jurisdiction.

### IV.    Dr. Brian Walker's Motion to Dismiss[38]

Dr. Brian Walker has moved to dismiss Rev. Goodwin's claims pursuant to Rule 12(b)(2), because this Court lacks personal jurisdiction over Dr. Walker, and pursuant to Rule 12(b)(6), because Rev. Goodwin's claims, which arise out of treatment rendered by Dr. Walker to Rev. Goodwin's late mother on or before September 27, 2007, four years before Rev. Goodwin filed this lawsuit in October 2011, fall outside the three-year prescriptive period for medical malpractice actions set forth in Louisiana Revised Statute § 9:6528.[39] Dr. Walker's motion to dismiss was filed on November 27, 2012 and noticed for submission

---

and assert new claims in an opposition to a motion to dismiss, the Court notes that even after considering these new allegations and claims, it remains clear that Rev. Goodwin lacks constitutional standing to bring her claim against Dr. Shahar.

[38] R. Doc. 56.

[39] In many ways, Dr. Walker's motion to dismiss echoes Dr. Shahar's motion to dismiss, as Rev. Goodwin's claims against the two doctors are very similar.

on December 19, 2012.  Rev. Goodwin did not file an opposition to Dr. Walker's motion by December 11, 2012, as required by Local Rule 7.5.  On December 17, 2012, the Court ordered Rev. Goodwin to respond to Dr. Walker's motion no later than December 31, 2012, and warned that failure to comply with this deadline may result in Dr. Walker's motion to dismiss being granted as unopposed.[40]  To date, Rev. Goodwin has not responded to Dr. Walker's motion to dismiss.

Accordingly, **IT IS FURTHER ORDERED** that Dr. Walker's motion to dismiss Rev. Goodwin's claims against him be and hereby is **GRANTED** as unopposed.

**IT IS FURTHER ORDERED** that Rev. Goodwin's claims against Dr. Walker be and hereby are **DISMISSED.**

## V.    HANO's[41] Motion to Dismiss[42]

As did Dr. Shahar, HANO has moved to dismiss Rev. Goodwin's claim under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.[43]  Rev. Goodwin opposed HANO's motion.[44]  HANO has filed a reply in further support of its motion.[45]

At the outset, the Court notes that it is very difficult to discern from Rev. Goodwin's

---

[40] R. Doc. 70.

[41] "HANO" is short for the Housing Authority of New Orleans.

[42] R. Doc. 51.

[43] Unlike Dr. Shahar, however, HANO does not move to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  This marks the second motion to dismiss filed by HANO, as it previously moved to dismiss Rev. Goodwin's second amended complaint on May 22, 2012.  *See* R. Doc. 28.  On March 28, 2013, the Court denied HANO's first motion as moot in light of the filing of HANO's second motion, which is the motion now before the Court and which supersedes and replaces HANO's first motion.  *See* R. Doc. 112.

[44] R. Doc. 85.

[45] R. Doc. 100.

second amended complaint what she claims HANO did wrong and what she seeks as a result of HANO's alleged wrongdoing.  There are certain allegations that could conceivably be directed at HANO, such as Rev. Goodwin's prayer that the Court "Change Public Housing Authorities," but there are no specific allegations of wrongdoing on the part of HANO or any basis for liability on the part of HANO in connection with her more general grievances.[46]  As was the case with Dr. Shahar, Rev. Goodwin's failure to demonstrate any connection between her claims, whether general or specific, and the actions of HANO, means she has failed to carry her burden of establishing the "fairly traceable" requirement for constitutional standing.[47] As a result, the Court finds Rev. Goodwin lacks standing to bring her claims against HANO and, because Rev. Goodwin lacks standing to bring those claims, the Court lacks subject matter jurisdiction to consider those claims.

Accordingly, **IT IS FURTHER ORDERED** that HANO's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) be and hereby is **GRANTED.**  Because the Court grants HANO's motion to dismiss for lack of subject matter jurisdiction, the Court need not address HANO's arguments for dismissal for failure to state a claim under Rule 12(b)(6).

**IT IS FURTHER ORDERED** that Rev. Goodwin's claims against HANO be and hereby are **DISMISSED.**

---

[46] Indeed, in Rev. Goodwin's opposition to HANO's second motion to dismiss, she essentially argues HANO should be liable for actions taken by the Baytown Housing Authority, which Rev. Goodwin characterizes as HANO's "counterpart."  Rev. Goodwin also raises a number of new allegations in her opposition, as she did in her opposition to Dr. Shahar's motion, but, as was the case with Dr. Shahar's motion, even after considering the new allegations raised in Rev. Goodwin's opposition, the Court remains convinced that Rev. Goodwin lacks standing to bring her claims against HANO.

[47] Also as with Dr. Shahar, the fact that Rev. Goodwin clearly has failed to establish the "fairly traceable" requirement means the Court need not address whether she is able to establish the other requirements for constitutional standing.

## VI.     The Baytown Defendants'[48] Motion to Dismiss[49]

The Baytown Defendants have moved to dismiss Rev. Goodwin's claims for lack of personal jurisdiction under Rule 12(b)(2), for improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6).  The Baytown Defendants have also moved, in the alternative, for a more definite statement under Rule 12(e).  Rev. Goodwin opposes the Baytown Defendants' motion.[50]  The Baytown Defendants have filed a reply in further support of their motion to dismiss.[51]  Unlike most of her claims, Rev. Goodwin's claims against the Baytown Defendants are fairly specific and, in most cases, relatively easy to understand.  However, asserting specific claims against a particular defendant is not, in and of itself, a sufficient basis for the invocation of federal jurisdiction.  For the reasons set forth below, the Court agrees with the Baytown Defendants that it lacks personal jurisdiction over them, and for this reason, Rev. Goodwin's claims against the Baytown Defendants must be dismissed.

Rule 12(b)(2) allows a defendant to challenge the Court's exercise of personal jurisdiction.  When a nonresident defendant seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing the Court's jurisdiction over the defendant, but, unless the Court convenes an evidentiary hearing on the issue, the plaintiff need only make a *prima facie* showing that the Court's exercise of personal jurisdiction is proper. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th

---

[48] The "Baytown Defendants" are the City of Baytown and the Baytown Housing Authority.

[49] R. Doc. 58.

[50] *See* R. Doc. 84; R. Doc. 87.

[51] R. Doc. 95.

22

Cir.2008); *see also Luv N' Care v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, 548 U.S. 904, 126 S.Ct. 2968, 165 L.Ed.2d 951 (2006). As with Rule 12(b)(1) attacks on the Court's subject matter jurisdiction, the Court is not restricted to reviewing the pleadings alone when considering a Rule 12(b)(2) attack on the Court's personal jurisdiction over a nonresident defendant; the Court may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *see Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 752 (5th Cir.1996). "In determining whether a prima facie case exists, this Court must accept as true [the plaintiffs'] uncontroverted allegations, and resolve in [their] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 219–20 (5th Cir. 2012) (quoting *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (alterations in original) (quotation omitted)).

"The Court may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction comports with Due Process." *Phillips v. ABB Combustion Engineering, Inc.*, — F. Supp. 2d —, 2013 WL 3010794, at *2 (E.D. La. 2013) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)). "Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the two-part inquiry merges into one: whether this Court's exercise of jurisdiction over the defendant[] would offend due process." *Id.* (citing LA. REV. STAT. ANN. § 13:3201(B); *Luv N' Care*, 438 F.3d at 469; *Electrosource, Inc. v. Horizon Battery Techs.*, Ltd., 176 F.3d 867, 871 (5th Cir. 1999)).

23

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985)(citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1994). A district court's exercise of personal jurisdiction comports with Due Process if the plaintiff shows (1) that the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado,* 615 F.3d 364, 367 (5th Cir. 2010) (citations omitted). "The 'minimum contacts' prong of the two-part test may be further subdivided into contacts that give rise to 'general' personal jurisdiction and 'specific' personal jurisdiction." *Choice Healthcare, Inc.*, 615 F.3d at 368. "Regardless of whether the lawsuit is related to the defendant's contacts with the forum, courts may exercise general jurisdiction over any lawsuit brought against a defendant that has substantial, continuous, and systematic general contacts with the forum state." *Phillips,* 2013 WL 3010794, at *2 (citing *Seiferth*, 472 F.3d at 271). "If, on the other hand, a defendant has relatively few contacts, a court may still exercise specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* (internal quotation marks omitted). "General jurisdiction focuses on incidents of continuous activity within the disputed forum; specific jurisdiction is more constrained by virtue of a very limited nexus

with the forum."[52]  *Id.*

Rev. Goodwin has failed to carry her burden of making a *prima facie* showing that this Court may properly exercise general or specific personal jurisdiction over the Baytown Defendants.  There is certainly no indication the Baytown Defendants have "substantial, continuous, and systematic general contacts" with this state, and in fact, none of Rev. Goodwin's claims against the Baytown Defendants has anything to do with this state.  As a result, Rev. Goodwin has not shown the Baytown Defendants have the requisite "minimum contacts" with the state of Louisiana for this Court's exercise of personal jurisdiction over those defendants to comport with Due Process.  Because the Court lacks personal jurisdiction over the Baytown Defendants, the Court dismisses Rev. Goodwin's claims against those defendants pursuant to Rule 12(b)(2).

Accordingly, **IT IS ORDERED** that the Baytown Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) be and hereby is **GRANTED.**  Because the Court dismisses Rev. Goodwin's claims against the Baytown Defendants under Rule 12(b)(2), it need not consider the Baytown Defendants' arguments for dismissal under Rules 12(b)(3) or 12(b)(6) or their alternative arguments for a more definite statement under Rule 12(e).

**IT IS FURTHER ORDERED** that Rev. Goodwin's claims against the Baytown

---

[52] If a plaintiff demonstrates minimum contacts between the defendant and the forum state, then the Court may exercise personal jurisdiction unless the defendant makes a "compelling case" that the exercise of personal jurisdiction is nevertheless unfair or unreasonable.  *Burger King*, 471 U.S. at 477. In determining whether the exercise of jurisdiction is fair and reasonable, the Court considers the following factors: "(1) the burden on the non-resident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies."  *Phillips*, 2013 WL 3010794, at *3 (citing *Nuovo Pignone*, 310 F.3d at 382).  Because Rev. Goodwin has not demonstrated minimum contacts between the Baytown Defendants and the forum state, the Court need not address these factors.

Defendants be and hereby are **DISMISSED.**

### VII.   The HUD Defendants'[53] Motion to Dismiss[54]

The HUD Defendants have moved to dismiss Rev. Goodwin's claims under Rule 12(b)(5) and Rule 4(m) for insufficient service of process.  The HUD Defendants argue Rev. Goodwin failed to properly serve a copy of her second amended complaint and that such failure should result in the dismissal of Rev. Goodwin's claims.  Rev. Goodwin opposes the HUD Defendants' motion.[55]

Rule 4 governs service of process in federal court.  Rule 4(a) provides a checklist of items that must be contained in a summons, and Rule 4(b) provides for issuance of summons.  Rule 4(c)(1) provides the basic rule that a summons must be served with a copy of the complaint and within the time allowed by Rule 4(m).  Under Rule 4(d), an individual may waive service of process, obviating the need for personal service.  Under Federal Rule of Civil Procedure 4(e), service on an individual who has not waived service is perfected in one of the following ways:

> (1)   [by] following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2)   [by] doing any of the following:

---

[53] The "HUD Defendants" are various officials within the United States Department of Housing and Urban Development ("HUD"): Tony Hebert, Fred Tombar, Daniel Rodriguez, and Debra Alexander. Mr. Hebert, Mr. Tombar, and Mr. Rodriguez were all sued in both their official capacity and their individual capacity.  Ms. Alexander was sued in her official capacity only.  Several other HUD officials were also named as defendants in Rev. Goodwin's second amended complaint, but, with the exception of Kelly Dorfman, those HUD officials have all been dismissed as defendants.  Furthermore, as explained above, Rev. Goodwin has not perfected service on Ms. Dorfman.  Rev. Goodwin also sued HUD itself, but HUD has been dismissed as a defendant.

[54] R. Doc. 63.

[55] R. Doc. 69; *see also* R. Doc. 89.

> (A)   delivering a copy of the summons and of the complaint to the individual personally;
>
> (B)   leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C)   delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Rule 4(i) provides special rules for service on the United States and its officers.  Rule 4(i)(1) requires service on the United States to be effected by delivery or sending a copy by registered or certified mail of the summons and the complaint to the United States Attorney for the district where the action is brought and sending a copy by registered or certified mail to the Attorney General of the United States in Washington, D.C.  Rule 4(i)(2) states the requirement for service on a United States officer sued in his or her official capacity:

> To serve . . . a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

Rule 4(i)(3) states the requirement for service on a United States officer sued in his or her individual capacity:

> To serve a United States Officer or employee individually sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Strict compliance with the service requirements contained in Rule 4 is mandatory, in part because, absent proper service, the Court lacks personal jurisdiction over a defendant.  *See*

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-51 (1999); *see also Philipp Bros. (Cocoa), Inc. v. M/V Ocea*, 144 F.R.D. 312, 314 (E.D. Va. 1992).

Under Rule 12(b)(5), a defendant may seek dismissal of a plaintiff's claims based on insufficient service of process. Rule 4(m) also permits a district court to dismiss a case without prejudice if a plaintiff fails to comply with Rule 4's service requirements. *See Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008). Rule 4(m) further provides, however, that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Ordinarily, "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." *Moore v. Agency for Intern. Development*, 994 F.2d 874, 876 (D.C. Cir. 1993). Whether to dismiss a case for insufficient service of process or extend the time for service is left to the district's court's discretion. *See Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 344–45 (5th Cir. 2007) (unpublished).

The HUD Defendants are all officers/employees of the United States. Tony Hebert, Fred Tombar, and Daniel Rodriguez are sued in their individual capacities as well as their official capacities. Deborah Alexander is sued in her official capacity only. There is no proof that any of the individual HUD Defendants waived service of process. As a result, Rev. Goodwin was required to comply with Rules 4(e) and 4(i) in serving her second amended complaint. While Rev. Goodwin clearly thinks she has complied with those rules, the record does not reflect that she has.[56] Instead, Rev. Goodwin served on the individual HUD

---

[56] Rev. Goodwin's efforts have, at least, put the HUD Defendants on notice of this suit and Rev. Goodwin's second amended complaint. However, providing actual notice of a complaint is not a substitute for strict compliance with Rule 4. *See Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988) ("The defendant's actual notice of the litigation . . . is insufficient to satisfy Rule 4's requirements.").

Defendants a summons and a copy of her motion for leave to file her second amended complaint. She did not effect by delivery by sending a copy by registered or certified mail of the second amended complaint on the United States Attorney General or the United States Attorney for the Eastern District of Louisiana. Nor did she send a copy of the second amended complaint by registered or certified mail to any of the individual HUD Defendants or comply with Rule 4(e) as it pertains to service on nonresident individuals in attempting to serve a copy of that second amended complaint.

As a result, the HUD Defendants correctly state that Rev. Goodwin has not complied with Rule 4 as it pertains to service on officers/employees of the United States sued in their official and individual capacities. The Court disagrees, however, that Rev. Goodwin's failure to comply with the technical requirements of Rule 4 should result in the dismissal of her claims against the HUD Defendants. The Court, in its discretion, will allow Rev. Goodwin <u>one final chance</u> to perfect service on the HUD Defendants and fully comply with Rule 4.

Accordingly, **IT IS FURTHER ORDERED** that the HUD Defendants' motion to dismiss Rev. Goodwin's claims under Rule 12(b)(5) be and hereby is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Rev. Goodwin shall perfect service on the HUD Defendants no later than **August 15, 2013,** at **5:00 p.m.**, and she shall file into the record proof of such service no later than **August 22, 2013,** at **5:00 p.m.** Absent exceptionally good cause, the Court will not extent this deadline and, should Rev. Goodwin fail to comply with this deadline by perfecting service on each of the HUD Defendants and filing proof of such service into the record, any or all of the HUD Defendants are free to re-urge their Rule 12(b)(5) motion to dismiss for insufficient service of process. In the event

Rev. Goodwin fails to perfect service by this deadline and the HUD Defendants wish to re-urge their Rule 12(b)(5) motion, such motion shall be filed and served no later than **August 30, 2013,** at **5:00 p.m.**

In the event Rev. Goodwin timely perfects service on the HUD Defendants and the HUD Defendants wish to file another Rule 12 motion, such motion shall be filed and served no later than **August 30, 2013,** at **5:00 p.m.** If Rev. Goodwin timely perfects service on the HUD Defendants and the HUD Defendants do not intend to file another Rule 12 motion, the HUD Defendants' answer to Rev. Goodwin's second amended complaint shall be filed and served  no later than **August 30, 2013,** at **5:00 p.m.**

### VIII.  Show Cause Order to the City of New Orleans and Stephen Don Carlos

Finally, the record reflects the following defendants have been served with copies of Rev. Goodwin's second amended complaint but have failed to answer or otherwise respond to that complaint: (1) the City of New Orleans, Louisiana[57] (the "City") and (2) Stephen Don Carlos ("Mr. Carlos").[58]  Rev. Goodwin has not moved for entry of default against the City or Mr. Carlos.

**IT IS FURTHER ORDERED** that the City and Mr. Carlos shall file each respond to Rev. Goodwin's second amended complaint no later than **August 15, 2013,** at **5:00 p.m.** or show good cause why either should not be required to do so.  Responsive pleadings must be received by the Clerk's Office for the Eastern District of Louisiana by this deadline to be considered timely filed.

---

[57] *See* R. Doc. 46.

[58] *See* R. Doc. 65-6.

30

Failure to comply with this deadline may result in sanctions.

**New Orleans, Louisiana, this** 25th **day of July, 2013.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

Court to Notify:
All named parties by regular and certified mail, including:

(1)  The City of New Orleans, through Sharonda Williams, City Attorney, City of New Orleans, 1300 Perdido St., New Orleans, LA 70112; and

(2)  Stephen Don Carlos, Mayor, City of Baytown, 2401 Market St., Baytown, TX 77522.